[Civ. No. 22801. Second Dist., Div. Three. Feb. 5, 1958.]

Estate of CHARLES L. BRENNEMAN, Deceased. EDNA A. BRENNEMAN et al., Contestants and Appellants, v. JOHN H. WEEKS et al., Petitioners and Appellants.

Paul Goodsell Sullins for Contestants and Appellants.

Bailey & McWhinney and Rufus Bailey for Petitioners and Appellants.

PATROSSO, J. pro tem.*—We are confronted here with cross-appeals by the heirs of the decedent upon the one hand and the heirs of his predeceased wife on the other, from the decree entered in a proceeding to determine heirship. By its decree the trial court determined that all of the property of the decedent with the exception of a single parcel of real property, constituted the community property of the decedent and his predeceased wife, which upon his death vested, subject to administration, one-half in the heirs of the decedent and one-half in the heirs of the deceased wife, and that the parcel of real property constituted the separate property of the decedent which descended to and vested in his heirs. The decedent's heirs, hereinafter referred to as contestants, appeal from so much of the decree as determines that any portion of his estate was community property of the decedent and his predeceased wife, and the heirs of the latter, hereinafter referred to as petitioners, appeal from the portion of the decree determining that the parcel of real property previously mentioned constituted separate property of the decedent. All of the estate with the exception of this parcel of real property is personalty.

Substantially all of the relevant facts were stipulated to upon the hearing and there is no material dispute with reference thereto.

The decedent died intestate on June 6, 1956, at the age of 86; his wife, whom he married in Pennsylvania on June 9, 1908, having predeceased him on August 11, 1953, at the age of 83. Following their marriage the parties resided in the state of Pennsylvania continuously until moving to California in the summer or fall of 1923, where they thereafter continued to reside until their respective deaths. Decedent went to grammar school in Chicora and Freeport, Pennsylvania, but did not finish the eighth grade. When he was about 15 he got a job in a grocery store in Freeport after which he was engaged in some kind of work in Washington, Pennsylvania, the exact nature of which does not appear. Thereafter he had what is described as a "brokerage job" in Connelsville, Pennsylvania, for an undisclosed period of time. In what activities, if any, decedent was employed at the time of or immediately preceding his marriage does not appear, and the same is likewise true of the period following his marriage during his residence in Pennsylvania. Some two years prior to his marriage

*Assigned by Chairman of Judicial Council.

decedent acquired improved real property in Aspinvale, Pennsylvania for a consideration of $6,250 and which he sold on December 1, 1923, for $6,200. Following his arrival in California decedent in 1926 acquired by a deed in his name as a married man, a parcel of real property in Pasadena which continued to be the home of the parties and in which decedent still resided at the time of his death. The consideration paid for this property does not appear. On May 29, 1928, decedent and his wife joined in the execution of a deed of this property to one Dolly C. Daugherty, who in turn, on November 2, 1928, reconveyed the property to decedent and his wife as joint tenants, and the record title thereto so remained at the time of decedent's death. The inventoried value of the decedent's estate including the real property last mentioned, all of which was acquired during marriage or with proceeds of property so acquired, is $86,440.93, and in addition to said real property consists of cash and a commercial checking account in the name of decedent aggregating $3,059.21; United States Savings Bonds in the name of decedent aggregating $19,275; promissory notes secured by trust deeds in the name of decedent and his wife as joint tenants in the total sum of $19,-424.06; certificates of various building and loan associations in the name of decedent aggregating $32,164.58; a savings and loan certificate in the name of decedent's wife in the sum of $1,018.08 and household furniture and furnishings of the value of $500.

Insofar as the record discloses little is known of decedent's activities during the period of his marriage but it was stipulated that neither decedent nor his wife were ever employed upon a salary or for wages. It does appear that during the period of his marriage decedent bought and sold shares of stocks and bonds in various corporations as well as real properties in both Pennsylvania and California. The Pasadena telephone directories contain no listing of a telephone in the name of decedent or his wife from 1923 to January 1941, and no listing for decedent thereafter disclosed any purported occupation of decedent. In the 1925 City Directory of Pasadena the decedent is listed at his residence address as a "teleg. opr."; in the 1930 directory as a "carp." and in the 1954 directory as a "tchr." In a Torrens certificate dated September 24, 1924, decedent's occupation is set forth as "telegraph operator" and in another Torrens certificate dated July 27, 1932, he is described as "retired." Upon the signature card which was prepared in connection with the opening by him of

a commercial bank account in the year 1926, his occupation is set forth as "builder." The record, however, is devoid of any independent evidence that he followed any of the indicated occupations. Aside from an inheritance which decedent received in 1926 from the estate of his father in the sum of $2,187.33, there is no evidence that either decedent or his wife ever received any property by way of gift, devise, bequest or descent.

The contestants (decedent's heirs) contend that the evidence which we have epitomized above is insufficient to sustain the trial court's finding that all of the personal estate constituted community property of the decedent and his predeceased wife, and in turn the latter's heirs contend that the evidence is insufficient to support the trial court's finding that the parcel of real property was the separate estate of the decedent.

In support of their contention that the trial court erred in its determination that all of the decedent's personal estate was community property, contestants urge that in order for petitioners to establish their right to succeed to some or all of the property in decedent's estate, the burden rested upon them not only to prove, as they admittedly did, that such property was acquired during the marriage, but in addition thereto that such property had its source in community property.

While in the cases construing Probate Code, sections 228 and 229, there are to be found some seemingly contradictory statements, which afford some basis for this contention, upon careful analysis it will be found that they do not support the proposition contended for by contestants.

While by virtue of section 164 of the Civil Code proof that property was acquired by husband or wife during marriage gives rise to a presumption that it is community, in *Estate of Reizian* (1951), 36 Cal.2d 746, 749 [227 P.2d 249], it is said: "In determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death, which is controlling. (*Estate of Abdale*, 28 Cal.2d 587 [170 P.2d 918] : *Estate of Perkins*, 21 Cal.2d 561[134 P.2d 231] ; *Estate of Rattray*, 13 Cal.2d 702 [91 P.2d 1042].)"

Contestants construe this language to mean that where the only proof produced by one claiming the right to inherit through a predeceased spouse with respect to the character

of the property in the estate of the surviving spouse, is that it was acquired during marriage, he has failed to establish his right. When viewed in the light of the facts of that case and of the cases therein cited in support of this statement, this is not correct. What the court there undertook to say was merely that if it is made to appear that property acquired during marriage by either spouse was originally the separate property of one of the spouses, it is to be treated as the separate property of such spouse. Thus in *Estate of Abdale* (1946), 28 Cal.2d 587 [170 P.2d 918], which is cited in support of the statement quoted above, it is held that property of the surviving spouse which was originally separate, but title to which prior to the death of the predeceased spouse was transferred to himself and wife as joint tenants, and later vested in the surviving spouse upon the death of his wife, is to be distributed upon the death intestate of the surviving spouse as his separate property. Moreover in the opinion in that case which was written by Mr. Justice Traynor who is the author of the opinion in the *Estate of Reizian*, speaking of the burden of proof it is said (p. 593) : ''It is settled that section 229 does not apply unless property allegedly distributable thereunder is traced and identified as the former separate property of the predeceased spouse (*Estate of Brady, supra*, 171 Cal. 1, 5 [151 P. 275] ; *Pickens* v. *Merriam*, 274 Fed. 1, 11), and that the burden is on the party claiming thereunder to so identify the property. (*Estate of Rattray, supra*, 13 Cal.2d 702, 706 ; *Estate of Harris, supra*, 9 Cal.2d 649, 662 [72 P.2d 873] ; *Estate of Simonton*, 183 Cal. 53, 60 [190 P. 442] ; see 9 Cal.Jur. 416, 563.)'' And in the *Estate of Rattray*, also therein cited, it is held that property originally community, which came to the surviving spouse by *inter vivos* gift from the predeceased spouse is, for the purposes of section 228, to be deemed community and not separate.

None of the foregoing authorities undertakes to declare, as contestants assume, that in order for the heirs of a predeceased spouse to establish prima facie their right to succeed to property shown to have been acquired during marriage, they must adduce independent evidence to the effect that such property did not have its source in separate property of the surviving spouse. On the contrary we believe that the correct rule in this regard is stated in *Estate of Adams* (1955), 132 Cal. App.2d 190 [282 P.2d 190], in which a hearing by the Supreme Court was denied, as follows (p. 196) :

''The Adams claimants are correct in contending that the

burden involved rested on the Schmitt claimants. These claimants are relatives of the predeceased Isabella. By section 228 they are made statutory heirs of George if they can prove that any property in his estate was in fact the community property of George and Isabella. Such proof is a condition precedent to recovery by them. . . .

"The Schmitt claimants, as respondents, do not seriously challenge this rule of law, but contend that they have met this burden. Their argument is simply that the court has found that certain properties in the possession of George when Isabella died in 1941 were acquired during the more than 32 years of married life other than by gift, devise, bequest or descent, and were, therefore, the community property of George and Isabella. This determination is supported by the presumption contained in section 164 of the Civil Code that such property acquired during marriage was community property. By reason of this presumption, which is itself evidence, the Schmitt claimants established a prima facie case, and the burden of proving that the property acquired after marriage and in the possession of George in 1941 was separate property, rested on the Adams claimants."

Contestants, however, assert that the foregoing statements are in conflict with the language of the opinion in the *Estate of Reizian, supra,* to the effect that "section 164 of the Civil Code creates no presumption as to the source of acquisition of property." At first blush there would appear to be some merit to this claim, but it is dissipated when considered in context and in the light of the particular facts of that case. The presumption there referred to is not, as contestants seemingly believe, the one to the effect that property acquired during marriage is presumed to be community but, as is apparent from the opening sentence of the paragraph in which the quoted statement occurs, to the presumption in section 164 that whenever a married woman acquires property by an instrument in writing it is presumed to be her separate property unless a contrary intention is expressed in the instrument. There the decedent was a married woman and the property in her estate consisted of an improved parcel of real property which was acquired during marriage and title thereto taken in her name. The contest was between the decedent's heir—her father—and the heirs of her predeceased husband. The former, claiming the right to succeed to the entire estate, relied, as stated in the opinion (p. 749) "upon the presump-

tion of section 164 of the Civil Code (that property acquired by a married woman in her name is presumptively separate) as proof that its source was the separate property of his daughter.'' The Supreme Court, holding that the presumption was inapplicable and afforded no support for the father's claim, proceeded to consider whether there was any other evidence supporting the trial court's finding to the effect that it was separate property, and finding such evidence present affirmed the judgment. But the court could have found it necessary to search for independent evidence of its separate character in order to support the judgment so decreeing only because it entertained the view that, absent such proof, the property was presumptively community because it had been acquired during marriage. We cannot bring ourselves to believe, as contestants' argument assumes, that the court entertained the view that, in a situation such as here where there is no independent evidence as to the source of the property in the estate of a surviving spouse other than the fact that it was acquired during coverture, such property is to be distributed as separate under Probate Code, section 229, rather than as community under section 228. ■ On the contrary the necessary effect of the decision in the *Estate of Reizian* would appear to be that upon proof that property in the estate of a surviving spouse was acquired during marriage, it is to be considered as community in the absence of evidence tending to prove that it had its source in the separate property of the decedent.

■ Insofar as the question of the burden of proof is concerned there is, therefore, no real conflict between the *Estate of Reizian* and *Estate of Adams,* and both cases are in harmony with the other authorities in this state announcing the same rule. Without extending this opinion unduly, the following quotation from *Estate of Jolly* (1925), 196 Cal. 547, 553 [283 P. 353], which involved a proceeding similar to this, will suffice:

''That portion of section 164 of the Civil Code which prescribes the rules of presumptions in community property cases provides as follows: 'All other property acquired after marriage by either husband or wife, or both, . . . is community property.'

'' 'The disputable presumption raised by section 164 of the Civil Code is a form of evidence under the express terms of section 1957 of the Code of Civil Procedure. It may be controverted by other evidence, direct or indirect, but unless

so controverted the court or jury is bound to find according to the presumption.' (*Stafford* v. *Martinoni*, 192 Cal. 724 [221 P. 919].)

" 'The community [property] generically embraces all property belonging to the spouses, except such as the statute specifically removes from its operation. Community property is the rule, separate property the exception thereto. Hence the presumption . . . follows. . . .' (Ballinger on Community Property, p. 213.)

" 'No evidence of sufficient strength was adduced at the trial to overcome the presumption created by section 164 of the Civil Code. . . . ▋ The presumption of the wife's community interest in property acquired after marriage can be overcome only by the production of clear and satisfactory proof that the property in question was the separate property of the wife.' (*Estate of Rolls*, 193 Cal. 594 [226 P. 608] ; see also *Dimmick* v. *Dimmick*, 95 Cal. 326 [30 P. 547] ; *Rowe* v. *Hibernia Sav. & Loan Soc.*, 134 Cal. 403 [66 P. 569] ; *Freese* v. *Hibernia Sav. & Loan Soc.*, 139 Cal. 392 [73 P. 172] ; 5 Cal.Jur. 311-313.) "

And at page 554 the court quotes with approval the following from 31 Corpus Juris 47: " 'Since the very basic conception of the community property system is that it is a species of partnership between a husband and wife, whereby they are to share equally in the benefit and enjoyment of the results of their joint or separate industry, labor and earning capacity, and, accordingly, 'separate property' is defined in terms necessarily making it an exception to the usual estate held by the members of the community, every inquiry as to whether particular property belongs to the community, or to the separate estate of one or the other members thereof, begins with a *prima facie* presumption that it belongs to the former, especially where the matrimonial union has continued for a considerable length of time. . . . The burden of overcoming the general presumption in favor of the community is upon the party asserting separate ownership; . . .' "

Here, the evidence is to the effect that all of the property in the estate of the decedent was acquired during the marriage or had its source in property so acquired, and there is no evidence that any part of such property was acquired with separate property of the decedent. While it is true that decedent at the time of his marriage possessed the parcel of real property in Pennsylvania which was sold in 1923 and he received a small inheritance from the estate of his father in

1926, none of these funds were traced into the property which he owned at the time of his death. They were apparently commingled with the community property of the parties, and the burden rested upon contestants to establish that some portion of the property possessed by decedent at the time of his death had its source in such separate estate. (*Estate of Fellows* (1930), 106 Cal.App. 681, 684 [289 P. 887]; *Lamb* v. *Lamb* (1955), 131 Cal.App.2d 489, 494 [280 P.2d 793]; *Estate of Adams* (1955), 132 Cal.App.2d 190, 197-198 [282 P.2d 190].) No such proof was made.

In view of the foregoing, we conclude that the trial court's finding that the personal estate was community is sustained by the evidence and by the same token that its findings that the parcel of real property was separate is without support.

The decree appealed from insofar as it determines that the personal estate is community is affirmed; insofar as it determines that the parcel of real property is separate it is reversed, and the cause remanded with directions to the trial court to amend its findings and decree accordingly. Petitioners John H. Weeks and V. Charles Weeks to recover costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

The petition of contestants and appellants for a hearing by the Supreme Court was denied April 2, 1958.